# Martha E. Oswalt, now for the use of Emeline Hugg, v. The Hartford Fire Insurance Company of Hartford, Conn., Appellant.

*Insurance—Fire insurance—Proof of loss—Waiver—Evidence—Question for jury.*

In an action upon a policy of fire insurance it appeared that the insurance company requested the insured to furnish plans and specifications of the buildings destroyed, bills and vouchers for goods destroyed, and a certificate of a magistrate or notary public residing nearest the place of the fire. There was some evidence that a plan prepared by a carpenter and an estimate of the cost of rebuilding the house was sent to the agent of the company; together with the certificate of a magistrate. Subsequently the assured wrote to the agent inquiring what further information was required. To this letter the company seems to have made no answer. *Held,* that it was for the jury to decide whether there had been a waiver on the part of the insurance company.

*Insurance—Fire insurance—Certificate of magistrate or notary public.*

Where a policy of fire insurance requires "the certificate of the magistrate or notary public residing nearest the place of fire," the certificate of the nearest justice of the peace is a sufficient compliance with the terms

of the policy, notwithstanding the fact that a notary public resides nearer to the fire than the justice, but has his office in a distant town and the insured does not know that he is a notary public.

Argued April 24, 1896. Appeal, No. 248, Jan. T., 1896, by defendant, from judgment of C. P. Centre Co., April T., 1894, No. 38, on verdict for plaintiff. Before STERRETT,. C. J., McCOLLUM, MITCHELL, DEAN and FELL, JJ. Affirmed.

Assumpsit on a policy of fire insurance. Before LOVE, P. J.

The material facts appear by the charge of the court which was as follows :

This is an action brought by Martha E. Oswald to the use of Emeline Hugg, against the Hartford Fire Insurance Company, to recover the amount of a loss sustained by the person insured, caused by a fire that occurred on the night of the 9th or the morning of the 10th of October, 1893. This policy was issued on the 29th day of June, 1893, and was to continue until the 29th day of June, 1896. The policy was, therefore, in due force when the fire occurred. This contract of insurance is simply for the purpose of indemnifying the person insured for the loss she has sustained. It is not a contract to pay the amount or value of the insurance expressed in the policy, unless the damage actually sustained by the party insured amounts to the value of the face of the policy.

It is the duty of both parties to a contract of insurance to comply with its provisions, or substantially so. The defense in this case sets up several propositions. One is that the insured failed to comply with the requirements of the policy, as to the proof of loss rendered to the company, and as to certain other items, namely, plans, specifications and vouchers, as required in certain sections of this policy. As to that question, we say that it is the duty of both parties to comply with the provisions of the policy, unless they be waived. A variety of circumstances may be held to be waivers. On the 19th of October the adjuster arrived here, went to the place of the fire, saw that the house was a total loss, made some inquiry in relation to it, and then hunted up the assured and endeavored to learn from her the value of the personal property that had been destroyed by the fire—the loss she had sustained thereon. They did not agree

in the schedule which was made and footed up, as she did not
think it covered her loss. It seems that there was some propo-
sition then made that she should come to Bellefonte. Her testi-
mony is that she did not positively agree to come, but the
adjuster testifies that that was the arrangement and that she
failed to come. A short interview was had next day, which
resulted in nothing. Then on the 31st of October a letter was
sent by the adjuster, Mr. Whitall, which it would seem was
served upon this plaintiff about the 15th of November, 1893,
asking for certain specifications, plans and vouchers of goods
which she had purchased and which she claimed she had lost.
When the first interview occurred, the evidence is that when
he asked for vouchers of the property and plans and specifica-
tions, she said she had no knowledge of the age of the build-
ing—had bought it a couple of years before—and that she could
not furnish them; and that her household property had been in
her possession for many years. On the 31st of October he wrote
a letter demanding practically the same thing. That letter was
served upon her. Then there is evidence that she got a car-
penter, J. C. P. Jones, to make some kind of a plan of the house
and an estimate of the amount of stuff it would require to re-
build it. And these papers, and also the list of the personal
property which she claimed was in the house and destroyed by
the fire, were served upon Mr. Rankin, the agent of the com-
pany. There is some question as to whether or not the sketch
was received by Mr. Rankin. He says he does not remember.
The testimony of Mr. Jones is that he put it in an envelope.
There is some dispute as to who actually delivered it. You
will have to determine, from that portion of the testimony,
whether or not the estimate of the cost of the material required
to reconstruct the house of the plaintiff was inclosed with these
papers to the local agent. Two of the papers were handed in,
because they were produced at the trial. Whether they received
the third or not we do not know. There seems to have been
no direct action taken on the part of the company in regard to
this plan, when the estimate was made. Whether or not that
was accepted on the part of the company as a compliance with
their demands for plans and specifications we do not know. It
seems that in no correspondence was there any allusion made to
this paper. Since the act of 1883, the proof of loss or any other

paper may be served on the local agent who' countersigned the policy, which, in this case, was Mr. W. B. Rankin of Bellefonte. Subsequent to that, there was a formal proof of loss made out, which the company admits was received on the 25th of November, 1893, and on the 2d of December a letter was written by Mr. Whitall in which he objected to it in a general way, referring also to his letter of the 31st of October. Correspondence followed, in which an inquiry was made by the plaintiff as to what further information was required as to the plans, specifications and vouchers. [Now, it is for you to determine, if you find they did receive and retain these plans and specifications of the house, whether or not their failure subsequently to reply more specifically as to what they wanted to verify the plans and specifications was a waiver on their part of anything further; and whether or not this was accepted by them as a formal proof of loss. We say to you that the formal proof of loss, as made out and sent ordinarily, would comply reasonably with the condition of the policy.] [3]  [One objection made to the certificate, that the fire was a just loss, that the amount of such loss was set forth in it and that the assured had sustained a loss practically to that amount, is because it was not executed before the nearest magistrate, the insurance company claiming that W. H. Musser, who was a notary public, lived a few rods nearer to Mrs. Oswalt than the justice before whom it was made. But it is urged that his chief place of business was in Bellefonte at that time. We say that under the evidence in this case, so far as that is concerned, it is a compliance with the provisions of the policy, in view of the fact that Musser's principal place of business was in Bellefonte, and that the plaintiff testified that she did not know he was a notary at the time; that going before a magistrate who was then the nearest, other than Musser, is a sufficient compliance with the terms of the policy, in our opinion.] [4]  As to that question, you will determine whether, by the action of the company, from the correspondence which will be sent out with you, they waived any portion of the provisions of the policy.

[It has been held by the Supreme Court that where an adjuster and an agent of the company visited the premises, and where the loss is total and they know of that fact, no technical form of proof of loss is required; and whether the plan and

estimate made in pursuance of the notice of October 31, which was served some time in November, whether the plan and estimate served upon Rankin was such a compliance, and to which subsequently there was no reference made specially, the company retaining it, whether it was a waiver of any further specifications and plans and whether the retaining of the formal proof and the correspondence which followed was a waiver or not, is for you to determine.] [5]  If you find it was, then the next question will be one as to the value of the property. . . .

[You will remember the testimony commented on by the counsel, as we have called your attention to it; and you will determine whether or not the company, as we have called your attention to the facts, waived any further requirements of the conditions of this policy by their actions or correspondence as to the proofs that were furnished and the plans and specifications; and if you find that they did not waive any, and that the plaintiff has not complied with the requirements of the policy, then, of course, the plaintiff cannot recover.  But we submit to you that question.] [6]  [It has been held by the Supreme Court that holding proofs of loss by a company is evidence tending to show a waiver of defects therein which the jury may consider.  It is their duty to return them and specify particularly wherein they are defective.  The plaintiff testifies here that a proof of loss was furnished to Mr. Rankin and that another proof of loss was sent to the company; and it is urged that the character of the reference to it in the letter of December 2, and their holding it and, when further particulars were asked for, their declining to give them, are evidence of a waiver of further requirements in that line.] [7]

Verdict and judgment for plaintiff for $1,005.62.  Defendant appealed.

*Errors assigned* among others were (1–7) above instructions, quoting them.

*Charles P. Hewes, J. L. Spangler* with him, for appellant, cited on the question of waiver: Langan v. Royal Ins. Co., 162 Pa. 357 ; Mispelhorn v. Farmers' Ins. Co., 53 Md. 473 ; O'Brien v. Com. Ins. Co., 63 N. Y. 108 ; German Am. Ins. v. Hocking, 115 Pa. 398.

Cited on the question of magistrate's certificate : Kelly v. Sun Fire Office, 141 Pa. 10 ; Wood on Fire Ins. sec. 442 ; 7 Am. & Eng. Ency. of Law, 1043 ; Gilligan v. Commercial Fire Ins. Co., 20 Hun, 93 ; Williams v. Niagara Fire Ins. Co., 50 Iowa, 561.

*Wilbur F. Reeder*, for appellee, cited on the question of waiver: Wightman v. Western M. & F. Ins. Co., 8 Rob. (La.) 442 ; Norton v. Rensselaer & S. Ins. Co., 7 Cowen, 645 ; W. & A. Pipe Lines v. Home Ins. Co., 145 Pa. 346 ; Welsh v. London Assurance Cor, 151 Pa. 607 ; Carpenter v. Allemannia Fire Ins., 156 Pa. 37 ; Universal Fire Ins. v. Block, 109 Pa. 535.

PER CURIAM, May 11, 1896 :

An examination of the testimony in this case, with special reference to the several assignments of error, has failed to convince us that there is anything in either of the learned trial judge's rulings that requires a reversal of the judgment.

Judgment affirmed.